1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

8
9

RICHARD HUBBARD,                )  1:07-cv-01225-SMS
                               )
             Plaintiff,        )  DECISION AND ORDER DENYING
     v.                        )  PLAINTIFF'S SOCIAL SECURITY
                               )  COMPLAINT (DOC. 1)
MICHAEL J. ASTRUE,             )
COMMISSIONER OF SOCIAL         )  ORDER DIRECTING THE ENTRY OF
SECURITY,                      )  JUDGMENT FOR DEFENDANT MICHAEL J.
                               )  ASTRUE, COMMISSIONER OF SOCIAL
             Defendant.        )  SECURITY, AND AGAINST PLAINTIFF
                               )  RICHARD HUBBARD
                               )
_____)

16
17    Plaintiff is proceeding pro se and in forma pauperis with an

18 action seeking judicial review of a final decision of the

19 Commissioner of Social Security (Commissioner) denying

20 Plaintiff's application of June 24, 2003, for Supplemental

21 Security Income benefits in which he had claimed to have been

22 disabled since April 15, 2000, due to a bad neck and bad back,

23 which caused neck pain, numbness, and tingling in his fingers,

24 back pain, and numbness, and tingling in the leg. (A.R. 104-06,

25 169.) The parties have consented to the jurisdiction of the

26 United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1),

27 and pursuant to the order of Judge Lawrence J. O'Neill filed

28 March 26, 2008, the matter has been assigned to the undersigned

1

1 Magistrate Judge to conduct all further proceedings in this case,
2 including entry of final judgment.

3      The decision under review is that of Social Security
4 Administration (SSA) Administrative Law Judge (ALJ) Christopher
5 Larsen, dated September 27, 2006 (A.R. 40-46), rendered after a
6 hearing held August 17, 2006, at which Plaintiff appeared
7 telephonically and testified telephonically after having chosen
8 to appear and testify without the assistance of an attorney or
9 other representative. (A.R. 341-75). The Appeals Council denied
10 Plaintiff's request for review on June 22, 2007 (A.R. 9-11), and
11 thereafter Plaintiff filed his complaint in this Court on August
12 22, 2007. Briefing commenced on December 17, 2008 and was
13 completed with the filing of the Commissioner's opposition on
14 March 10, 2009. Plaintiff did not file a reply. The matter has
15 been submitted without oral argument to the undersigned
16 Magistrate Judge.

17      I. Standard and Scope of Review

18      Congress has provided a limited scope of judicial review of
19 the Commissioner's decision to deny benefits under the Act. In
20 reviewing findings of fact with respect to such determinations,
21 the Court must determine whether the decision of the Commissioner
22 is supported by substantial evidence. 42 U.S.C. § 405(g).
23 Substantial evidence means "more than a mere scintilla,"
24 Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a
25 preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10
26 (9th Cir. 1975). It is "such relevant evidence as a reasonable
27 mind might accept as adequate to support a conclusion."
28 Richardson, 402 U.S. at 401. The Court must consider the record

as a whole, weighing both the evidence that supports and the
evidence that detracts from the Commissioner's conclusion; it may
not simply isolate a portion of evidence that supports the
decision. <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir.
2006); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).
It is immaterial that the evidence would support a finding
contrary to that reached by the Commissioner; the determination
of the Commissioner as to a factual matter will stand if
supported by substantial evidence because it is the
Commissioner's job, and not the Court's, to resolve conflicts in
the evidence. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 (9th
Cir. 1975).

        In weighing the evidence and making findings, the
Commissioner must apply the proper legal standards. <u>Burkhart v.
Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must
review the whole record and uphold the Commissioner's
determination that the claimant is not disabled if the
Commissioner applied the proper legal standards, and if the
Commissioner's findings are supported by substantial evidence.
<u>See,</u> <u>Sanchez v. Secretary of Health and Human Services</u>, 812 F.2d
509, 510 (9th Cir. 1987); <u>Jones v. Heckler</u>, 760 F.2d at 995. If
the Court concludes that the ALJ did not use the proper legal
standard, the matter will be remanded to permit application of
the appropriate standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th
Cir. 1987).

        II. <u>Disability</u>

                A. <u>Legal Standards</u>

        In order to qualify for benefits, a claimant must establish

1   that she is unable to engage in substantial gainful activity due
2   to a medically determinable physical or mental impairment which
3   has lasted or can be expected to last for a continuous period of
4   not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A
5   claimant must demonstrate a physical or mental impairment of such
6   severity that the claimant is not only unable to do the
7   claimant's previous work, but cannot, considering age, education,
8   and work experience, engage in any other kind of substantial
9   gainful work which exists in the national economy. 42 U.S.C.
10  1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th
11  Cir. 1989). The burden of establishing a disability is initially
12  on the claimant, who must prove that the claimant is unable to
13  return to his or her former type of work; the burden then shifts
14  to the Commissioner to identify other jobs that the claimant is
15  capable of performing considering the claimant's residual
16  functional capacity, as well as her age, education and last
17  fifteen years of work experience. Terry v. Sullivan, 903 F.2d
18  1273, 1275 (9th Cir. 1990).

19      The regulations provide that the ALJ must make specific
20  sequential determinations in the process of evaluating a
21  disability: 1) whether the applicant engaged in substantial
22  gainful activity since the alleged date of the onset of the
23  impairment, 2) whether solely on the basis of the medical
24  evidence the claimed impairment is severe, that is, of a
25  magnitude sufficient to limit significantly the individual's
26  physical or mental ability to do basic work activities; 3)
27  whether solely on the basis of medical evidence the impairment
28  equals or exceeds in severity certain impairments described in

4

1 Appendix I of the regulations; 4) whether the applicant has
2 sufficient residual functional capacity, defined as what an
3 individual can still do despite limitations, to perform the
4 applicant's past work; and 5) whether on the basis of the
5 applicant's age, education, work experience, and residual
6 functional capacity, the applicant can perform any other gainful
7 and substantial work within the economy. See 20 C.F.R. § 416.920.

8               B. The ALJ's Findings

9     The ALJ found that Plaintiff had severe impairments of
10 status post-cervical fusion, degenerative disc disease, bilateral
11 carpal tunnel syndrome, and left ulnar nerve entrapment, but they
12 did not meet or medically equal a listed impairment. Plaintiff
13 had the residual functional capacity to lift and carry twenty
14 pounds occasionally and ten pounds frequently; stand, walk, and
15 sit for six hours each in an eight-hour work day; and grasp
16 forcefully occasionally, but not reach overhead. (A.R. 42.)
17 Plaintiff could perform his past relevant work as a waiter. (Id.
18 at 45-46.) Accordingly, Plaintiff was not disabled at any time
19 since June 24, 2003, the date Plaintiff's application was filed.

20     III. Credibility Findings

21     Plaintiff challenges on various grounds the ALJ's findings
22 concerning his credibility.

23         A. Legal Standards

24     The factors to be considered in weighing credibility are set
25 forth in the regulations and pertinent Social Security rulings.
26 They include the claimant's daily activities; the location,
27 duration, frequency, and intensity of the claimant's pain or
28 other symptoms; factors that precipitate and aggravate the

symptoms; the type, dosage, effectiveness, and side effects of
any medication the claimant takes or has taken to alleviate the
symptoms; treatment, other than medication, the person receives
or has received for relief of the symptoms; any measures other
than treatment the claimant uses or has used to relieve the
symptoms; and any other factors concerning the claimant's
functional limitations and restrictions due to pain or other
symptoms. 20 C.F.R. §§ 404.1529, 416.929; S.S.R. 96-7p.

With respect to the course of analysis directed by the
regulations, the ALJ is first obligated to consider all symptoms
and the extent to which the symptoms can reasonably be accepted
as consistent with the objective medical evidence and other
evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). Once it is
determined that there is a medically determinable impairment that
could reasonably be expected to produce the claimant's symptoms,
the ALJ must then evaluate the intensity and persistence of the
symptoms to determine how the symptoms limit the capacity for
work. §§ 404.1529(b), (c); 416.929(b), (c). The ALJ will consider
all available evidence. To the extent that the claimant's
symptoms can be reasonably accepted as consistent with the
objective medical evidence and other evidence, the symptoms will
be determined to diminish the claimant's capacity for basic work
activities. §§ 404.1529(c)(4); 416.929(c)(4). A claimant's
statements will not be rejected solely because unsubstantiated by
the available objective medical evidence. §§ 404.1529(c)(2);
416.929(c)(2).

Further, the pertinent Social Security Ruling provides in
pertinent part that an ALJ has an obligation to articulate the

reasons supporting the analysis:

> ...When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

S.S.R. 96-7p at 4.

Unless there is affirmative evidence that the applicant is malingering, then where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which the applicant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration,, 533 F.3d 1155, 1160 (9th Cir. 2008).

B. Analysis

The ALJ noted Plaintiff's subjective complaints of nerve pain in his neck and shoulder, shooting pains in both arms that he could handle with medications but that were worse without

medications, inability to work because he could not clip his own toenails or sit through a television show, lack of desire to go through the pain of multiple neck surgeries as his father did, assignment of light duty and thus lack of a job in prison, his experience of failing grip despite there being nothing in prison to lift, his ability to lift only a gallon of milk but not for long, ability to lift and carry only five to ten pounds for 100 yards, sit for only half an hour without having to stand up or lie down, and cramping in his hands when they were used for long; the ALJ also mentioned that Plaintiff reported going to the yard for about an hour, doing a lap or two, and then sitting down, although he once did fifty sit-ups and thirty pull-ups and as a result was down for three days. The ALJ also noted that Plaintiff testified that he would see a doctor in the upcoming month for pain and medication. (A.R. 43, 345.)

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms, but Plaintiff's statement about the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (A.R. 43.) The ALJ expressly found that Plaintiff's credibility was poor. (A.R. 45.)

The ALJ then stated multiple clear and convincing reasons that were supported by substantial evidence in the record for the credibility findings.

In this circuit, valid criteria for evaluating subjective complaints include weak objective support for claims, inconsistent reporting, infrequent treatment, helpful medications, conservative care, and daily activities inconsistent

1  with disability. <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601-02 (9th Cir.

2  1998). Inconsistent statements are matters generally considered

3  in evaluating credibility and are properly factored in evaluating

4  the credibility of a claimant with respect to subjective

5  complaints. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir.

6  2002). Included in the factors that an ALJ may consider in

7  weighing a claimant's credibility are the claimant's reputation

8  for truthfulness; inconsistencies either in the claimant's

9  testimony or between the claimant's testimony and the claimant's

10 conduct, daily activities, or work record; and testimony from

11 physicians and third parties concerning the nature, severity, and

12 effect of the symptoms of which the claimant complains. <u>Thomas v.

13 Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ may

14 consider whether the Plaintiff's testimony is believable or not.

15 <u>Verduzco v. Apfel</u>, 188 F.3d 1087, 1090 (9th Cir. 1999). A

16 claimant's extremely poor work history shows that she has little

17 propensity to work and negatively affects her credibility

18 regarding her inability to work. <u>Thomas v. Barnhart</u>, 278 F.3d

19 947, 959 (9th Cir. 2002).

20     The ALJ appropriately relied on Plaintiff's own testimony

21 that he could handle his pain with medications. Although

22 Plaintiff testified that Neurontin helped to a point as long as

23 he did not do anything (A.R. 345), he also testified that his

24 pain was moderate if he did nothing, and that he could handle it

25 with medications, (A.R. 356). Plaintiff testified that the

26 shooting pain in both his arms "had a mind of its own," and it

27 "attacked [him] whenever it wants to"; he expressly testified

28 that he did not see any pattern between what he was doing and

whether he was in pain. (A.R. 356.) Considering all Plaintiff's
testimony, the record fairly supports the ALJ's reasoning that
Plaintiff himself testified that although he suffered pain, the
pain could be endured with medications. It is the ALJ's
perogative to weigh and evaluate evidence in the first instance,
and this Court will not reweigh the evidence de novo.

The ALJ relied on Plaintiff's poor motivation, stating in
pertinent part:

> Just as significant is Mr. Hubbard's comment to Dr.
> Budhram that he needed to "remain disabled to avoid
> paying FMES." The fact that Mr. Hubbard had no interest
> in returning to work, and intended to be disabled,
> does not speak well for his motivation or his
> credibility.

(A.R. 45.)

Plaintiff contests the accuracy of the record of this
statement in the course of briefing this case, asserting in
argument that Plaintiff did not know what FMES is. (Doc. 28, p.
2, item no. 7.) However, the record of Dr. Budhram's progress
notes reflects an entry concerning Plaintiff dated June 24, 2003,
that "NEEDS TO REMAIN DISABLED TO AVOID PAYING FMES." (A.R. 321.)
Further, the record reveals that Plaintiff had no job in prison
despite having been put on light duty status. Plaintiff testified
that when Plaintiff did stop working, he did so because he kept
dropping stuff and experienced grip failure every couple of days.
(A.R. 352, 355.)

Although there is some conflict in the record, when all the
evidence is considered, substantial evidence supports the ALJ's
finding that Plaintiff had poor motivation to work.

The ALJ reasoned that the objective medical evidence did not

10

1  support Plaintiff's claimed symptoms. (A.R. 45.) Although the
2  inconsistency of objective findings with subjective claims may
3  not be the sole reason for rejecting subjective complaints of
4  pain, Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997), it is
5  one factor which may be considered with others, Moisa v.
6  Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Morgan v.
7  Commissioner 169 F.3d 595, 600 (9th Cir. 1999). The ALJ's reliance
8  on this specific inconsistency was initially appropriate in the
9  instant case because of the presence of other clear and
10  convincing reasons that were supported by substantial evidence in
11  the record.

12      A brief summary of the objective medical evidence
13  demonstrates that the record supports the ALJ's reasoning and
14  demonstrates the clear and convincing force of the reasons
15  expressed.

16      Tests revealed less than severe symptoms in 2000. In July
17  2000, a study of Plaintiff's upper extremities revealed abnormal
18  nerve conduction velocity, with evidence of left C5-6
19  radiculopathy but no evidence of ulnar or median neuropathy on
20  either side. (A.R. 292-95.) In September 2000 an EMG revealed C5-
21  C6 radiculopathy, and Plaintiff was advised to keep up with his
22  physical activity to avoid flare-ups. In November 2000, a CT scan
23  of the cervical spine revealed no significant lesion. (A.R. 256-
24  57.) An MRI of the spine taken in November 2000 revealed a
25  bulging disc on the posterior of C6-C7. (A.R. 311.) Dr. Randall
26  Meredith diagnosed cervical disc disease with radiculopathy in
27  January 2001; although Plaintiff complained of pain and numbness,
28  range of motion of the neck was good and not very painful when

11

slow; the neck was tender; the sensory exam of the hands was
normal despite Plaintiff's complaints of his hands' feeling a
little bit asleep. (A.R. 254.) In February 2001, a neurosurgeon
recommended surgery as reasonable, and in May 2001, surgeon Dr.
James Tate performed an anterior cervical diskectomy and fusion
at C6-C7 with a right iliac autograft and bilateral C7
foraminotomies. (A.R. 287, 285.)

Afterwards, Plaintiff resumed activity with mild neck
stiffness and arm tingling and pain. (A.R. 277.) In July 2001, an
x-ray of the cervical spine revealed that the anterior fusion was
visible; vertebral alignment and position were good, and disc
spaces were normal in width; there was no prevertebral soft
tissue swelling; and there was slight bony spurring from the
vertebral body margins at the level of the fusion. (A.R. 275.) In
December 2001, physician's assistant Blake Harris examined
Plaintiff, who complained of both shoulders' burning at a time
when Neurontin had stopped working, but the Neurontin was
restarted, and a prescription for Norco was refilled. (A.R. 300.)

After cancelling a couple of appointments in later 2001 and
early 2002 (A.R. 298-99), Plaintiff complained of chronic
shoulder and arm pain, tingling, and numbness with any kind of
physical activity; Naprosyn was restarted. (A.R. 297.)

In 2003, Plaintiff was treated by Dr. Harold Budhram for
pain beginning in May. (A.R. 312-22.) In June 2003, Dr. Budhram
examined Plaintiff, and the doctor observed no pain movement, no
tender spots on palpation, intact sensory exam, symmetrical
reflexes, full and pain-free range of motion, and negative leg
raising. He diagnosed Plaintiff with cervical disc disease and

altered pain tolerance secondary to methamphetamine abuse. (A.R. 321.) In July 2003, a CT scan of the cervical spine reflected minimal narrowing of the spinal canal and bilateral neural foramen at C6-C7, left greater than right, secondary to hyperostosis of the fusion, and mild narrowing of the spinal cord. (A.R. 320.)

In September 2003, Dr. Budhram diagnosed carpal tunnel syndrome (CTS), based on reduced sensation in the left ulnar distribution, and a positive Tinel's and Phalen's signs. (A.R. 318.) A nerve conduction study showed bilateral CTS and left ulnar entrapment. (A.R. 318.) Plaintiff was referred to a specialist, but there are no records of any treatment by a specialist for Plaintiff's CTS. (A.R. 315.)

A MRI scan of the cervical spine in October 2003 revealed that Plaintiff was status post anterior cervical fusion C6-7 with bone bridging the former disc space, no canal stenosis or spinal cord impingement, disc protrusion, or any abnormal signals in the cervical or upper thoracic spine cord, and a mild and broad-based posterior annular bulge at C5-6 without contact with the cervical cord or canal stenosis; further, the lumbar disc spaces were maintained in height. (A.R. 305-06.)

In 2004, Plaintiff was treated by Dr. Krouse for pain management, and Plaintiff saw physician's assistant Blake Harris. (A.R. 351.) Plaintiff switched to Blake right after the surgery, although he had gone to Krouse for years, and Blake was Plaintiff's "nominal doctor," or the "one guy that [Plaintiff] went to all the time." (A.R. 351.)

In summary, as the ALJ reasoned, the objective medical

evidence did not support Plaintiff's claims of completely
disabling pain with any activity. The test results and
examinations did not reveal the presence of any objective
findings consistent with Plaintiff's claims. The ALJ detailed the
objective medical evidence (A.R. 43-44), which substantially
supported the ALJ's clear and convincing reasoning in this
regard.

The ALJ noted that Plaintiff failed to show for an
appointment in December 2001, and he called and canceled in
January 2002. (A.R. 43, 298-99.) However, this was mentioned in
the course of the ALJ's review of the medical evidence; from the
context, it does not appear that the ALJ expressly relied on it
in coming to his credibility determinations.

The ALJ also reasoned in pertinent part:

> I further find Mr. Hubbard's credibility poor. He
> has a long history of substantial methamphetamine abuse,
> and was imprisoned in April 2004 for five years.
> Although these events do not indicate untruthfulness in
> a specific instance, they certainly cast a shadow
> on Mr. Hubbard's character, veracity, and credibility.

With respect to Plaintiff's criminal record, as discussed in
Albridez v. Astrue, 504 F.Supp.2d 814, 821 (C.D.Cal. 2007), some
courts have accepted conviction of a felony as a basis for a
negative credibility finding. Simmons v. Massanari, 264 F.3d 751
(8th Cir. 2001) (upholding without discussion a negative
credibility finding based on the claimant's having given
conflicting statements and having been convicted of forgery);
Williams v. Commissioner of Social Security, 423 F.Supp.2d 77, 84
(W.D.N.Y. 2006) (holding without discussion that the ALJ's
reliance on the claimant's testimony that she had engaged in

14

1 assaultive conduct in the past and possibly in criminal behavior,

2 including income tax evasion, was within the ALJ's reasonable

3 discretion). However, other courts have limited the range of

4 convictions to those involving moral turpitude. <u>Albridrez v.</u>

5 <u>Astrue</u>, 504 F.Supp.2d 814, 822 (C.D.Cal. 2007) (approving use of

6 a conviction of presenting false identification to an officer and

7 a conviction of the violent crime of attempted robbery, but not

8 permitting use of a conviction of simple battery). These holdings

9 are generally consistent with Fed. R. Evid. 609, which provides

10 in substance that for the purpose of attacking the character for

11 truthfulness of a witness, evidence that any witness has been

12 convicted of a crime shall be admitted regardless of the

13 punishment, if it readily can be determined that establishing the

14 elements of the crime required proof or admission of an act of

15 dishonesty or false statement by the witness, and regardless of

16 the elements, if a witness has been convicted of a crime

17 punishable by death or imprisonment in excess of one year under

18 the law under which the witness was convicted if determined not

19 to be prejudicial.

20     Here, the parties have not informed the Court of the nature

21 of the conviction/s suffered by Plaintiff, and the Court's review

22 of the record has not disclosed this information. It does appear

23 that the record is consistent with Plaintiff's having been

24 imprisoned for five years, with a release date of January 2009.

25 (A.R. 345, 4, 81.) The Court concludes that although the record

26 appears to support the ALJ, without knowing the nature of

27 Plaintiff's conviction, it is difficult to conclude with

28 certainty that this factor was clear and convincing.

1

2    With respect to Plaintiff's drug abuse, Plaintiff argues

3 that his drug abuse is irrelevant because he is not filing on the

4 basis of dependency on alcohol or drugs; he has no criminal

5 record of drug offenses or "DUI's"; and the ALJ's remarks were

6 unprofessional and offensive. (Doc. 28, p. 4.)

7    Considering the entire record, the Court concludes that the

8 ALJ's reference to Plaintiff's drug abuse is reasonably

9 understood as rejecting Plaintiff's complaints of pain and

10 limitations because a doctor had diagnosed Plaintiff with altered

11 pain sensitivity secondary to his long-term abuse of

12 methamphetamine. This would be directly relevant to Plaintiff's

13 credibility concerning his pain. The ALJ noted that the

14 conviction and drug abuse did not indicate untruthfulness in a

15 specific instance, but rather simply cast a shadow on Plaintiff's

16 credibility. The reasoning concerning this factor thus is

17 carefully stated and is clear and convincing in force. Further,

18 it does not appear that the ALJ put undue emphasis on this

19 factor.

20    Where only some of the specific reasons stated by an ALJ for

21 rejecting an applicant's credibility are legally sufficient or

22 supported by the record, but others are not, the Court must

23 consider whether the ALJ's reliance on invalid reasons was

24 harmless error. Batson v. Commissioner of Social Security

25 administration, 359 F.3d 1190, 1195-97 (9th Cir. 2004). Such

26 errors are harmless and do not warrant reversal where there

27 remains substantial evidence supporting the ALJ's conclusions on

28 credibility, and the error does not negate the validity of the

1 ALJ's ultimate credibility conclusions. <u>Carmickle v.</u>
2 <u>Commissioner, Social Security Administration</u>, 533 F.3d 1155, 1162
3 (9th Cir. 2008). The relevant inquiry is not whether the ALJ would
4 have made a different decision absent any error, but rather
5 whether the ALJ's decision remains legally valid despite such
6 error. <u>Id.</u>

7     Here, because of the presence of multiple clear and
8 convincing reasons supported by substantial evidence in the
9 record that support the ALJ's credibility findings, the Court
10 concludes that even if it were erroneous to consider the
11 Plaintiff's conviction/s, any error did not negate the validity
12 of the ALJ's ultimate credibility conclusions, and substantial
13 evidence remains to support those conclusions.

14     The Court therefore rejects Plaintiff's challenges to the
15 findings that the ALJ made concerning Plaintiff's credibility.

16     IV. <u>Opinion Evidence</u>

17     The ALJ noted but rejected the opinion of Dr. Krouse
18 rendered on October 13, 2004, regarding Plaintiff's residual
19 functional capacity (RFC) reflecting ability to stand ten to
20 fifteen minutes; walk one-half block in distance, with a need to
21 walk every twenty minutes for ten minutes, but being capable of
22 walking for less than two hours; sit for fifteen minutes; lift
23 less than ten pounds, and only rarely; twist, stoop, and crouch
24 rarely, but never climb ladders or stairs; perform only limited
25 repetitive reaching, handling, and fingering; and perform gross
26 and fine manipulation and reaching, including overhead, only ten
27 per cent of a workday. Plaintiff would need numerous unscheduled
28 breaks for twenty to thirty minutes, and he would need to lie

down for one hour in an eight-hour workday; he was likely to be absent more than four days per month. (A.R. 324-29.)

These functional limitations were based on physician's assistant Blake Harris's monthly observations of Plaintiff in connection with pain management of lumbar and cervical disk disease. Plaintiff's symptoms were daily shoulder and neck pain experienced in the activities of daily living, lower back pain, and radicular symptoms of numbness and tingling that often interfered with attention and concentration; reduced lumber range of motion, sensory loss, reflex changes, tenderness, muscle weakness, and impaired sleep; and emotional factors contributing to the severity of the symptoms, which were reasonably consistent with the impairments. (A.R. 323-29.)

The ALJ gave "little weight" to this opinion. (A.R. 45.)

The standards for evaluating treating source's opinions are as follows:

> By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians. See 20 C.F.R. § 404.1527. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." Id. § 404.1527(d)(2). If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. Id. § 404.1527(d)(2)(i)-(ii). Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the

> opinions of examining non-treating physicians are
> afforded less weight than those of treating
> physicians. Id. § 404.1527(d)(1)-(2). Additional
> factors relevant to evaluating any medical
> opinion, not limited to the opinion of the
> treating physician, include the amount of relevant
> evidence that supports the opinion and the quality
> of the explanation provided; the consistency of
> the medical opinion with the record as a whole;
> the specialty of the physician providing the
> opinion; and "[o]ther factors" such as the degree
> of understanding a physician has of the
> Administration's "disability programs and their
> evidentiary requirements" and the degree of his or
> her familiarity with other information in the case
> record. Id. § 404.1527(d)(3)-(6).

Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

With respect to proceedings under Title XVI, the Court notes
that an identical regulation has been promulgated. See, 20 C.F.R.
§ 416.927.

As to the legal sufficiency of the ALJ's reasoning, the
governing principles have been recently restated:

> The opinions of treating doctors should be given more
> weight than the opinions of doctors who do not treat
> the claimant. Lester [v. Chater, 81 F.3d 821, 830 (9th
> Cir.1995) (as amended).] Where the treating doctor's
> opinion is not contradicted by another doctor, it may
> be rejected only for "clear and convincing" reasons
> supported by substantial evidence in the record. Id.
> (internal quotation marks omitted). Even if the
> treating doctor's opinion is contradicted by another
> doctor, the ALJ may not reject this opinion without
> providing "specific and legitimate reasons" supported
> by substantial evidence in the record. Id. at 830,
> quoting Murray v. Heckler, 722 F.2d 499, 502 (9th
> Cir.1983). This can be done by setting out a detailed
> and thorough summary of the facts and conflicting
> clinical evidence, stating his interpretation thereof,
> and making findings. Magallanes [v. Bowen, 881 F.2d
> 747, 751 (9th Cir.1989).] The ALJ must do more than
> offer his conclusions. He must set forth his own
> interpretations and explain why they, rather than the
> doctors', are correct. Embrey v. Bowen, 849 F.2d 418,
> 421-22 (9th Cir.1988).
> Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998);
> accord Thomas, 278 F.3d at 957; Lester, 81 F.3d at
> 830-31.

Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

The path of analysis required to be followed by an ALJ is established. The ALJ was first required to determine whether or not the opinion of the treating physician would be given controlling weight, which in turn required consideration of whether or not the treating physician's opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in the case record. Orn, 495 F.3d at 631.

If not given controlling weight, the opinion was then subject to consideration in light of other specified factors, including the nature and extent of the treatment relationship, the amount of relevant evidence that supported the opinion, the quality of the explanation provided, the consistency of the opinion with the record as a whole, the specialty of the doctor providing the opinion, and other factors such as the degree of understanding of the Commissioner's disability programs and their evidentiary requirements and the degree of his or her familiarity with the other information in the record. Orn, 495 F.3d at 631.

Here, one reasons why the ALJ placed little weight on the doctor's opinion was because the ALJ understood it as being largely the opinion of physician's assistant Harris without significant input from, or communication with, the doctor. (A.R. 45.) Thus, the opinion was considered to have the weight of that of a source other than an acceptable medical source under the regulations. The ALJ noted that there was not a long history of treating Plaintiff. (A.R. 45.) The record supports this conclusion, revealing that the record of treatment of Plaintiff stretches from July 2001 through March 2002, and reflected only a

few visits, most of which involved examinations by Harris instead
of Dr. Krouse. (A.R. 296-302.) Plaintiff contends in argument
that before Plaintiff's surgery, Harris had examined Plaintiff,
increased his medications, and referred him out for a second
opinion as to Plaintiff's eventual surgery. (Doc. 28, p. 2.)
However, this does not significantly alter the pertinent facts
concerning the nature of the treatment relationship between
Plaintiff, on the one hand, and Dr. Krouse and/or Harris on the
other.

The record suggests, and the parties do not dispute the
accuracy of the ALJ's conclusion, that it was Harris who filled
out the RFC evaluation form, and Krouse who signed it. (A.R. 45.)
The treatment records largely bear out the ALJ's conclusion that
Harris was the one who examined and treated Plaintiff, including
writing prescriptions, and Dr. Krouse sometimes signed off on the
treating notes. (A.R. 45, 296-302.) Further, as the review of the
objective medical evidence set forth above demonstrates, the
opinion from Krouse/Harris was not consistent with other relevant
evidence.

Social Security Ruling 06-03 provides that in evaluating the
opinion of an other medical source, such as a physician's
assistant, the length and frequency of the relationship with the
claimant and expertise are appropriately considered. It also
acknowledges that the opinion of a physician may be given greater
weight than that of an other source because a physician is an
acceptable medical source.

Case law further establishes that a physician's assistant
may be considered to be an acceptable medical source where the

assistant consults frequently and works closely with a physician
and thus acts as an agent of the doctor in the relationship with
the patient. In <u>Gomez v. Chater</u>, 74 F.3d 967, 970-71 (9th Cir.
1996), the court relied on 20 C.F.R. § 416.913 regarding reports
of interdisciplinary teams and determined that a nurse
practitioner who worked in conjunction with, and under the close
supervision of, a physician could be considered an acceptable
medical source, but one working on his or her own is not an
acceptable medical source.

Here, the degree of supervision is not established, and the
record revealed quite limited involvement by Dr. Krouse. Thus,
the ALJ reasonably determined that the opinion was entitled to
less weight on that basis.

The ALJ summarized the other relevant evidence, including
objective evidence showing only mild degenerative disc disease of
the lumber spine, a neck that improved after surgery, carpal
tunnel syndrome for which Plaintiff never sought specialized
treatment, and the more recent, mild findings on examination by
Dr. Budhram in June 2003 (no sensory loss, no tender spots, full
and pain-free range of motion), all of which were inconsistent
with the extent of debilitation Harris attributed to Plaintiff.
(A.R. 45.) It is appropriate for the ALJ to evaluate the
consistency of an opinion with the relevant evidence of record.
Further, a more recent opinion may in some circumstances be
entitled to greater weight. <u>Hunter v. Sullivan</u>, 993 F.2d 31, 35
(4th Cir. 1993). Here, Dr. Krouse did not see Plaintiff after
Plaintiff went to prison, and Dr. Budhram's treatment of
Plaintiff was more recent than Dr. Krouse's. As the ALJ expressly

noted, physician's assistant Harris completed the RFC questionnaire in October 2004, but he had last seen Plaintiff in March 2002, more than two and one-half years earlier. The ALJ expressly reasoned that the opinion was based on sparse, out-dated office visit notes. (A.R. 45.)

The Court concludes that the ALJ gave legitimate and specific reasons for placing little weight on the opinion of Plaintiff's treating sources. Contrary to Plaintiff's contention, the ALJ admitted all the evidence but simply applied a weighing process to the evidence and concluded based thereon.

Further, the ALJ's conclusion was supported by substantial evidence in the form of the opinion of the state agency medical analyst and reviewer who concluded that Plaintiff could perform light work without overhead reaching, and with only occasional power gripping. (A.R. 45, 245-52.) Dr. Miller had opined on November 24, 2003, and Dr. Eskander had affirmed on June 2, 2004, that due to Plaintiff's degenerative disc disease and CTS, Plaintiff could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and/or walk about six hours in an eight-hour work day, sit about six hours in an eight-hour workday, engage in unlimited pushing and pulling, but not engage in overhead reaching and engage in only occasional power gripping. (A.R. 245-52.) It is established that the opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Here, they are consistent with the findings of examining and treating sources.

23

1    In summary, the Court concludes that the ALJ gave specific
2  and legitimate reasons, supported by substantial evidence in the
3  record, for his weighing of the opinion evidence.

4         V. <u>Past Relevant Work as Substantial Gainful Activity</u>

5    The ALJ concluded that Plaintiff could perform his past
6  relevant work on the basis of the testimony of vocational expert
7  (VE) Judith Najarian. Najarian testified in pertinent part that
8  Plaintiff could perform the work of a waiter, which was light, 4,
9  and semi-skilled. (A.R. 365.) Plaintiff's work history report
10 reflected that Plaintiff reported working as a waiter/cashier in
11 a restaurant for a month in 1992. (A.R. 189.) Plaintiff reported
12 that he was a waiter for eight hours a day, three days a week, at
13 $20 per shift. (A.R. 170.)

14    Plaintiff argues that his work as a waiter was not
15 substantial gainful activity and asserts in argument that he he
16 took food to the wrong tables and never learned the job. (Doc.
17 28, p. 3.) The court interprets Plaintiff's argument as a
18 challenge to the larger finding of substantial gainful activity.

19    To be found disabled, an individual's severe medically
20 determinable physical and/or mental impairments must render the
21 person unable to do the person's previous work and any other kind
22 of substantial gainful work that exists in the national economy.
23 20 C.F.R. § 416.920(e). Past relevant work is defined by
24 regulation as work done within fifteen years of the adjudication
25 of the claim (in SSI cases pursuant to Title XVI of the Act) or
26 within fifteen years of the date last insured (in DIB cases
27 pursuant to Title II of the Act) that lasted long enough for the
28 person to learn to do it and was substantial gainful activity

1  (SGA). 20 C.F.R. § 416.965(a); Soc. Sec. Ruling 82-62.

2  Substantial gainful activity is work activity that is 1)

3  substantial work, i.e., activity involving significant physical

4  or mental activities, even if done part-time, and 2) gainful work

5  activity, i.e., work activity done for pay or profit, or of a

6  type usually done for pay or profit, whether or not a profit is

7  realized. 20 C.F.R. secs. 404.1572, 416.972. <u>Byington v. Chater</u>,

8  76 F.3d 246, 248 (9th Cir. 1996). Earnings are a prime factor, and

9  the presence of substantial earnings indicates substantial

10 gainful activity. 20 C.F.R. sec. 416.974(a)(1). Earnings from

11 work activity as an employee before January 1, 2001, ordinarily

12 show that an employee engaged in substantial gainful activity if

13 they averaged more than the amounts in Table 1 of sec. 416.974

14 for the times in which the employee worked. 20 C.F.R. §

15 416.974(b)(2)(i). Pursuant to sec. 416.974(b)(3), earnings that

16 ordinarily show that an employee had <u>not</u> engaged in SGA include

17 earnings for months before January 2001 were, for calendar years

18 1990 through 2000, earnings less than $300.00. 20 C.F.R. sec.

19 416.974(b)(3), at Table 2.

20     According to Plaintiff, he worked from 9-92 through 10-92

21 for eight hours per day, three days a week, at $20.00 per shift.

22 (A.R. 170.) The record shows not that Plaintiff made $20.00 per

23 hour, as contended by Defendant, but rather $20.00 per <u>shift</u> of

24 eight hours. (Deft.'s Brf. p. 11, ll. 7; A.R. 170.)[1]  A month of

25 thirty or thirty-one days would logically include four weeks of

26 three shifts each, or twelve shifts, plus at least one other work

27

28        [1] Earnings records reflect different amounts, but there is a suggestion that the earnings record for the period
in question is incomplete. (A.R. 164-65.)

day, for a total of 13 shifts, or $260.00 for the month-long
period; because of the brevity of Plaintiff's employment, an
averaging process does not appear to be needed. The amount which
Plaintiff's earnings was to exceed in order for the earnings
themselves to demonstrate SGA was $500 in calendar years January
1990 through June 1999. 20 C.F.R. sec. 416.974(b)(2), at Table 1.
The fact that Plaintiff's earnings were less than the $300 amount
renders Plaintiff's earnings presumptively not from SGA.

The effect of earnings below $300.00 was explained by the
Court in Lewis v. Apfel, 236 F.3d 503, 515-16 (9th Cir. 2001), a
case in which the claimant's earnings from 1990 through 1994
always averaged below $300 :

> The presumption that arises from low earnings
> shifts the step-four burden of proof from the claimant
> to the Commissioner. Without the presumption, the
> claimant must produce evidence that he or she has not
> engaged in substantial gainful activity; if there is no
> such evidence, the ALJ may find that the claimant has
> engaged in such work. With the presumption, the
> claimant has carried his or her burden unless the ALJ
> points to substantial evidence, aside from earnings,
> that the claimant has engaged in substantial gainful
> activity. The regulations list five factors: the nature
> of the claimant's work, how well the claimant does the
> work, if the work is done under special conditions, if
> the claimant is self-employed, and the amount of time
> the claimant spends at work. 20 C.F.R. §§ 404.1573 &
> 416.973.

Here, the record contains Plaintiff's admissions that he
held the job of waiter and in fact had held jobs between a worker
in the dish room to the head dinner cook at the last restaurant
at which he worked (A.R. 170, 365.) The vocational expert (VE)
testified that the job of waiter was a light job and semi-skilled
that Plaintiff could perform even with his limitation on forceful
grasping. (A.R. 370-73.) The VE testified that her testimony

concerning the characteristics of the position was not
inconsistent with the characteristics listed in the Dictionary of
Occupational Titles. The listing reflects that the job of a
waiter is one that involves significant physical or mental
activities, even if done part-time, and it is of a type that is
usually done, and was done by Plaintiff, for pay or profit. The
ALJ expressly relied on the VE's testimony. (A.R. 45-46.) There
is no evidence that Plaintiff was unsuccessful in his employment
as a waiter.[2] There is no evidence that Plaintiff worked under
special conditions or received any subsidy. He was not self-
employed. He maintained the employment for a short period of time
and worked part-time. However, there was no suggestion in the
record that Plaintiff's employment as a waiter was engaged in at
a part-time rate because of any functional limitation of
Plaintiff. Plaintiff's testimony reveals that he spent a more
extended period of time in the restaurant industry.

In light of all the evidence in the record, the Court
concludes that the record contains substantial evidence rebutting
the presumption that because of the amount of earnings,
Plaintiff's employment as waiter was not SGA. Considering all
pertinent factors, the Court concludes that the ALJ's reasoning
in this regard was made pursuant to correct legal standards and
was supported by substantial evidence in the record.

VI. The Record

Plaintiff argues that the "complete" medical record would
contain enough evidence to prove his debilitation. (Doc. 23, p.

_____

[2]Plaintiff's assertion to the contrary in briefing does not constitute evidence that was in the record before the ALJ.

2.) However, this argument misconceives the standard of review, which requires this Court to affirm the ruling of the ALJ if made pursuant to correct legal standards and with the support of substantial evidence.

To the extent that Plaintiff is contending that the decision was not made on an adequate record, the Court notes that the only doctors listed by Plaintiff on the disability report forms were Dr. Budhram and Mr. Harris. (A.R. 174, 179, 181.) The ALJ and Plaintiff discussed additional records at the hearing; Plaintiff asserted that there would be more records in addition to those beginning in 2000 then possessed by the ALJ because Plaintiff's treatment had begun earlier; however, the ALJ noted that Plaintiff's alleged onset date was April 15, 2000, and normally earlier records would not be needed. Further, the ALJ and Plaintiff went over the items of medical evidence, and it did not appear that any major portion of the pertinent medical record was missing. (A.R. 345-51.)

Further, the Court notes that the only specific evidence referred to as missing by Plaintiff is records from Mountain Valley Physical Therapy by Vicki D. Gines, P.T., which stated that Plaintiff received only temporary relief from therapy. (WARRANT FOR REMAND, Doc. 28, p. 1.) However, the time period of the therapy is not set forth, so it has not been demonstrated that the evidence is material. In any event, the limited efficacy of therapy does not significantly undercut any of the ALJ's findings.

Plaintiff also states that he at unspecified times has been on several different medications for depression and anxiety and

1 anti-psychotic medications because his conditions caused him many

2 mental problems. (Doc. 23, p. 2.) However, no specific evidence

3 is offered, and the Court notes that Plaintiff does not point to

4 any evidence in the record to support his assertions.

5      Plaintiff does not otherwise attempt to make or make a

6 showing that Plaintiff had additional material evidence that was

7 not introduced at the hearing and that Plaintiff had good cause

8 for not producing it earlier. See, 42 U.S.C. section 405(g). It

9 is established that it is the burden of the party seeking the

10 Court to consider new evidence to show that the evidence is

11 material and probative of the party's condition at the relevant

12 time period, namely at or before the disability hearing. Sanchez

13 v. Secretary of Health and Human Services, 812 F.2d 509, 512 (9th

14 Cir. 1987). Evidence is sufficiently material to require a remand

15 where it bears directly and substantially on the matter in

16 dispute, and it is such that there is a reasonable possibility

17 that the new evidence would have changed the outcome of the

18 Commissioner's determination had it been before the Commissioner.

19 Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001). To

20 demonstrate good cause, a claimant must demonstrate that the new

21 evidence was unavailable earlier. Mayes v. Massanari, 276 F.3d

22 453, 463 (9th Cir. 2001).

23      Plaintiff has failed to make this showing.

24      Accordingly, the Court concludes that Plaintiff has not

25 demonstrated any inadequacy of the record.

26      VII. Counsel

27      Plaintiff states in the course of argument that he proceeded

28 without counsel but that he had no choice. (WARRANT FOR REMAND,

Doc. 28, p. 1.)

On November 26, 2003, Plaintiff's claim was denied, and the denial contained advice that Plaintiff could have a friend, lawyer, or someone else help him, and that there were groups who could help find a lawyer or give Plaintiff free legal services if he qualified; Plaintiff was given a number to call. (A.R. 63-66.) Plaintiff appointed Richard G. Grogan as his representative in August 2004. (A.R. 81.) In June 2005, after the first hearing was held without Plaintiff's appearance due to Plaintiff's incarceration, Plaintiff was sent a letter from his counsel explaining that counsel would no longer represent Plaintiff and would inform the OHA office. (A.R. 81-85.) On July 19, 2006, notice of the hearing was sent out, and it included information that Plaintiff could choose to have a representative. (A.R. 88.) Plaintiff stated at the second hearing that counsel's withdrawal occurred because counsel did not or could not travel to the hearings. (A.R. 346.)

Congress has extended to claimants a right to representation as well as to written notification of information concerning options for representation. 42 U.S.C. § 406.; Clark v. Schweiker, 652 F.2d 399, 403 (5th Cir. 1981); Figueroa v. Secretary of HEW, 585 F.2d 551, 554 (1st Cir. 1978). However, the absence of counsel alone does not provide a ground for reversing or remanding the SSA's decision to deny benefits; rather, a lack of counsel warrants a remand only if the claimant demonstrates prejudice or unfairness in the administrative proceedings. Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981). The Court has attempted to review all the significant findings challenged by

1  Plaintiff, and it has familiarized itself with the record. The
2  Court concludes that Plaintiff has not demonstrated that he was
3  deprived of any right or that there was any prejudicial effect
4  from his proceeding pro se. In this circuit, it is established
5  that if a claimant is unrepresented at a non-adversary hearing
6  before an ALJ, the duty of the ALJ is to scrupulously and
7  conscientiously explore all relevant facts, with especial
8  diligence in ensuring that favorable as well as unfavorable facts
9  and circumstances are elicited. Vidal v. Harris, 637 F.2d at 713.
10 Here, the ALJ conducted a full inquiry into the adequacy of the
11 medical record and the pertinent facts, obtained evidence from a
12 VE, and encouraged Plaintiff himself to engage in the examination
13 of the VE. (A.R. 343-44, 363-70, 372-73.)

14      The Court concludes that Plaintiff has not demonstrated that
15 any prejudice or unfairness in the administrative proceedings
16 resulted from the absence of counsel at the hearing. No basis for
17 remand is established.

18      VIII. Disposition

19      Based on the foregoing, the Court concludes that the ALJ's
20 decision was supported by substantial evidence in the record as a
21 whole and was based on the application of correct legal
22 standards.

23      Accordingly, the Court AFFIRMS the administrative decision
24 of the Defendant Commissioner of Social Security and DENIES
25 Plaintiff's Social Security complaint.

26      The Clerk of the Court IS DIRECTED to enter judgment for
27 /////
28 ///////

Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Richard Hubbard.

IT IS SO ORDERED.

**Dated:    August 13, 2009            /s/ Sandra M. Snyder**
UNITED STATES MAGISTRATE JUDGE